OPINION
Defendant Lisa Patrick appeals the judgment and order of the Marion Municipal Court overruling her motion to suppress evidence, and asserts one assignment of error with the trial court's judgment.
 The Trial Court erred to the prejudice of the Defendant-Appellant in denying Appellant's Motion to Suppress Evidence and to Dismiss [sic].
On the early afternoon of October 8, 1998, Detective Greg Layne of the Marion County Sheriff's office was engaged in surveillance of the Inn Towne Motel in Marion. At that time, he observed the defendant get into a vehicle in the motel parking lot and drive off. Detective Layne knew the defendant, who was an informant for the Marion County Drug Task Force, and believed that the defendant did not have a driver's license. Although Detective Layne's testimony at the suppression hearing is unclear, the trial court found that when Detective Layne recognized the defendant he requested the Marion Police Department Dispatch to run the defendant's driving record, and that the police dispatch subsequently informed Detective Layne that the defendant did not have a valid driver's license. The defendant disputes this account, arguing that the evidence presented at the suppression hearing establishes that no call was made until after the defendant was placed under arrest.
It is undisputed, however, that Detective Layne called for the assistance of a marked patrol car to stop the defendant's vehicle, and that Officer Ben Graff of the Marion Police Department responded to the call. At the suppression hearing, Officer Graff testified that he relied solely upon Detective Layne's statement that the defendant did not have a driver's license and admitted that he did not know whether Detective Layne had confirmed the defendant's license status with a police dispatcher.
Defendant argues that because Officer Graff based his decision to stop her only upon Detective Layne's assertion that defendant did not possess a valid driver's license that Officer Graff lacked the reasonable suspicion required by Terry v. Ohio
(1968), 392 U.S. 1. C.f., e.g., State v. Goodrich (1996),114 Ohio App.3d 645, 648. However, even assuming defendant's assertion is correct, our review of Officer Graff's testimony reveals that no corroborative information was necessary because noTerry stop occurred.
 I heard Detective Lane [sic] come over the air saying he needed a marked vehicle for a person that he was following that he knew did not have a driver's license. And he said it was Lisa Patrick, she was northbound on State Street. I was at the Fairview Apartments at the time, I turned west onto Fairview Street, I saw her vehicle headed east, I'm watching and I had to turn my vehicle around. I saw her vehicle go north onto Fairwood and I lost sight of her for a little bit at this time, I get to Robertson and — Richmond Avenue and I looked to the north and I see the vehicle parked in a driveway and she's getting out of the car. So I turned onto Richmond Avenue, I parked the vehicle on the curb, I did not activate my overhead lights, I get out of the vehicle and I asked her name and —
Q: What did she say?
 A: — she shook her head yes, and I asked if she had a driver's license and she kind of hesitated and then she said no, she didn't.
Q: So what did you do after that then?
 A: I asked her for her date of birth and social security number and I called it into dispatch.
 Q: And did you verify then that she was under suspension?
A: Yes * * *. (Emphasis added)
The foregoing excerpt clearly establishes that Officer Graff had not made any attempt to detain the defendant at the time she admitted to not having a driver's license. The Fourth Amendment standards governing Terry stops do not apply unless and until a person has actually been `seized,' see, e.g., United States v.Mendenhall (1980), 446 U.S. 544, 554 (Stewart, J., concurring), and "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." Florida v.Bostick (1984), 501 U.S. 429, 434. So long as a reasonable person would feel "free to leave" the encounter is a consensual one, and reasonable suspicion is not required. See id.
 [A] person has been `seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.
E.g. California v. Hodari D. (1991), 499 U.S. 621, 627-28, quotingMendenhall, 446 U.S. at 554 (Stewart, J., concurring). It cannot be said that the mere approach and questions of Officer Graff, without more, constitute a "show of authority" sufficient to cause a reasonable person to believe that she was not free to leave. Cf. id. at 628-29. Instead, this is "clearly the sort of consensual encounter that implicates no Fourth Amendment interest." Florida v. Rodriguez (1984), 469 U.S. 1, 5-6.
For the foregoing reasons, we conclude that at the time of Officer Graff's approach defendant had not yet been seized, and that a reasonable person in defendant's position would have felt free "to disregard the police and go about his business." HodariD., 469 U.S. at 628. Her decision to cooperate and answer Officer Graff's questions does not implicate any Fourth Amendment interest. Moreover, when she chose to tell Officer Graff that she did not have a valid operator's license, her answer provided a "reasonable suspicion" sufficient to support Terry detention while he confirmed that to be true. Accordingly, defendant's sole assignment of error is overruled, and the judgment of the Marion Municipal Court is affirmed.
Judgment affirmed.
BRYANT, P.J., and WALTERS, J., concur.